and Adderall Faculties, by Timothy Brackman. Mr. Howell, good afternoon. Sorry we've kept you all waiting. We had a late morning call. We quote, order specifically that defendants negotiate the terms of the escrow agreement with plaintiffs in good faith. That was the directive that this court gave in its May 28, 2008 opinion in the prior appeal. That was the directive that these defendants ignored. And that was the directive that these defendants ultimately convinced the trial judge in the present case to disregard. But this court's directive for the defendants to negotiate the terms of the escrow in good faith must be followed. And because it must be followed, the trial court's judgment in the current case should be reversed. As this court is undoubtedly aware, this appeal stems from a contract for purchase of real estate between the plaintiff as the purchaser and the defendants as the sub. The real estate the plaintiff is purchasing is part of a bigger parcel of real estate the defendants are developing. As this court is also undoubtedly aware, a dispute arose between the parties concerning the posting of certain cash earnest money and the entry into an earnest money agreement, an escrow agreement. The defendants, the settlers, had tendered an escrow agreement previously but purported to terminate the party's contract before the plaintiff had even had a chance to make comments on that escrow agreement. Nevertheless, even after the defendants terminated the party's contract, the purchaser, plaintiff, provided comments to that initial draft of escrow agreement way back when and actually signed that revised version of the escrow agreement tender. But despite that tender of the escrow agreement, the settler, the defendant, still took the position that that contract was terminated and the initial lawsuit then followed from that. And during that lawsuit, as an attempt to settle it, the prior lawsuit, prior to the trial, plaintiff tendered a subsequent signed escrow agreement, different from the initial escrow agreement because it did not include most of the changes that had been proposed by the plaintiff. However, defendants, by their counsel, Mr. Ratcliffe, rejected that settlement escrow agreement and returned it to plaintiffs. And that was all in the context in connection with the initial lawsuit, which then proceeded to trial and, of course, the first appeal in this matter. And in that first appeal, this court found that the defendant's termination of the party's contract was improper, should not have been terminated. And the court made the specific directive to the defendants, specifically to the defendants, you must negotiate the escrow agreement in good faith. The defendants petitioned for leave to appeal to the Supreme Court. The petition for leave to appeal was denied in November, on November 26th of 2008. The mandate was then issued to the clerk of the circuit court on January 8th, 2009. And on February 5th, 2009, Judge Petrancaro entered judgment on remand in accordance with this court's order. Again, which included the directive that the defendants specifically negotiate the escrow agreement in good faith. Since the date of the denial of the petition for leave to appeal, since the date of the return of the mandate, and since the date of Judge Petrancaro's judgment on remand, defendants have done nothing regarding the escrow agreement, despite this court's directive that defendants specifically must negotiate in good faith. Instead, prior to the Supreme Court's decision, defendants signed the previously rejected settlement escrow agreement. So the second escrow agreement, the one that we tendered just for purposes of settlement. I have a question about that. In the correspondence from them, I thought they did tend those documents. They did indeed. The one that they signed, did it have an original signature on it? Not of my client, just of that. It was a copy of my client's signature and an original of their client's signature. Was it dated? It was not dated by my client. And I don't, I'll be honest with you, I don't recall those. So it's a Xerox signature? It was absolutely a Xerox signature, yes. And again, it's important to note that that was the settlement escrow agreement and not the initial escrow agreement. And the reason it's important to note that is because this court actually, and in the opinion, said that there are various provisions in the initial escrow agreement that weren't commercially unreasonable, that actually might have made some sense for the parties to include. But that's not the one that the defendants had signed and sent back. They sent back the settlement one, which didn't have those terms in it, and had just been tendered solely for the purpose of avoiding the first trial. Okay, if you're signing this, we'll go for it. But it wasn't the one that the parties had actually, that plaintiffs had actually attempted to negotiate, that the court had looked at in connection with the first appeal. Now, importantly for context in this case, during this entire time, from the time of filing the initial lawsuit through the appeal, the defendants continued to develop their property. They obtained governmental approvals. They changed the very character of their development. The parties' contract, however, requires the parties to go through this process together. But defendants didn't include the plaintiffs in that process. Even after this court issued its opinion in the first appeal, they did not include the plaintiffs in that process. Are you arguing that that's relevant to the escrow agreement? It is relevant to the negotiation in good faith of the escrow agreement after the remand. Okay. Why is that? Well, because for us to negotiate the escrow agreement in good faith, we wanted to be assured that there was still a piece of property that would be available for the plaintiffs to purchase, the actual purpose for the parties entering into the contract in the first place. And that's why, after receiving the signed copy of the previously rejected escrow agreement that had just been tendered for settlement, we said, that was already rejected. You rejected it. The mandate hasn't occurred, so it's not timely yet. You have to do it after the mandate and the issuance of the judgment. And tell us what you've done to the property. Give us some proof that the property still exists before we post $50,000 worth of cash that then they could tie it. Tell us, as part of the good faith negotiation that the parties were supposed to engage in, tell us what you've done to the property. So that's in the context of why that information was so important to the purchase. It's part of the good faith that the parties were supposed to show. And specifically, that this court said the defendant was supposed to show the good faith. Just a little bit, my way of follow-up. The original contract, as I recall, did not have a description of the property? That's correct. And there was no attachment, exhibit A or anything that gave a description of the property? Not signed with the initial contract, right. That came up later when the parties tendered a site plan and agreed upon a site plan, which was then sent on to Walgreens as part of its committee of proof. That was all. Part of the issue is actually one of the defenses they raised in the first appeal, which this court said, no, you can determine what that size of the parcel is by doing the calculation of what is required for that size of a Walgreens with a certain amount of parking. Consistent with the site plan that the parties had signed off on, that was what ultimately got tendered to Walgreens and got the committee approval. If you were willing to enter into an escrow agreement with that sort of indefinite description of the property in the contract? Well, would we have been willing to enter into an escrow agreement? Certainly, even with that indefiniteness. But that site plan was a necessary step prior to depositing $50,000 in cash, because the cash wouldn't have gone in until Walgreens approved. And the site plan had to be approved by the parties before it was tendered to Walgreens. So really, before the cash went in, the parties would have had something more definite to that. But entering into the escrow agreement, yes, posting the extra $50,000, not necessarily. And the difference here is that the money had to be deposited prior to your finding out what the changes were that had been negotiated? Well, consistent with what the parties had, they not improperly terminated it in the first place. Then none of these changes to the development would have occurred. So there was no risk to the plaintiffs, if you will. We knew where the property was, in essence, what the property was. They hadn't gone forward and changed the development itself and hadn't excluded us from entering that process. But still, they were required to give us a survey of the actual real estate, which to date they still haven't done. And they hadn't done as of the time of the first trial. They haven't done as of the time of the second trial, but they still haven't done that. So it was their obligation to get a survey to identify specifically the meets and bounds of the parcel itself as well. I'm struggling with how the order of the court that the defendants should negotiate in good faith the escrow agreement is somehow violated by their failure to do something that appears to be unrelated to the escrow agreement. Well, I don't know that it's necessarily unrelated. I understand that if you look at it just solely, this is what the contract says, this is what the escrow agreement says. But it's not exactly what the court ordered was for the defendant to negotiate in good faith. Our contention on that was, in good faith, they needed to participate in a discussion, in a negotiation. And part of that discussion and negotiation, tell us what you've done to the property. Return the property so that when we post this $50,000, it's not just becoming a nullity because the property has been changed so dramatically that we couldn't go forward with the contract in the first place. Or that whatever they had done would be changed. I hate to be over-simplistic, but couldn't you all just go out there and look at the property and see if it was really going to violate it? It was different than necessarily that. There were potentially physical changes to the property, but it was entering into PUD agreements, restrictions with the village, sort of restrictions on how and what could be developed on the property itself. And how big the other parcels in their figure plat of PUDs were going to be. So if they identified this parcel as being this size and this parcel as being this size, you couldn't physically go out and look at it because nothing had actually been changed on the parcel itself physically. But had been done in the plat of PUD approved by the village. So if there was going to be some change to the parcel that had to be made, then the defendants would have had to go in and revise the plat of PUD as well. So that they got the approval of the village to be able to do that. And just hitting upon one of the other reversible errors that Judge Petka engaged in in this case was relying on his own personal experience in negotiating escrow agreements and doing real estate developments rather than solely relying on the evidence in this case. He specifically said that he was relying on his own personal experience and wanted to make sure this court knew that he was relying on this. That it was mundane, that these are the kinds of agreements that people don't negotiate. Well didn't he mean to say that I'm looking at this evidence in line with someone who's an experienced real estate lawyer? Well I think that might be the case, except for he was saying I'm involved in six separate real estate transactions. And in his experience, you don't negotiate the escrow agreements. They're mundane terms. They contain this and you do that. Well that's counter to what this court already said where there were terms that could be included into the escrow agreement that would be commercially reasonable that we had proposed. So we had no ability to say yes, but Judge, that wasn't this kind of case. Your experience wasn't like this. It didn't involve a bigger development. We don't know whether it was one parcel within a larger development or if he just did a single asset transaction. We don't know whether there was just cash going into the earnest money agreement. We don't know whether they were held with title companies. We don't know whether there were attorney's fees clauses in it. We don't know whether there was an attorney on the other side. We don't know whether there were even opportunities to negotiate those in the other cases because we don't know what it is he was relying on. But in this context of this particular case, he was supposed to enforce your order that said that the defendants were supposed to negotiate in good faith. And simply tendering a previously rejected document saying this is it, now put up the $50,000 is a far cry from their exercise of the negotiation in good faith. I have a question about this. Good faith to me is a two-way street. Once they tendered the now-climbed but previously rejected escrow agreement, what did you do? Was there correspondence? Yes, yes. There was a response back from us saying you previously rejected that. You can't breathe life back into it. Plus, the mandate hasn't come down yet. So, you need to do something after the date of the mandate. And finally, give us some information about what you've done with the property. Tell us what you've done concerning the property. Is that correspondence in the record? Yes, yes. And that was presented to judges? Yes, it was. It's actually, I believe, Exhibit F that was introduced by the plaintiffs. So, when you get that previously rejected house signed agreement, your correspondence will show up in the survey? These are the conditions we would agree to? If there wasn't anything that said, these are the specific conditions or here are some additional things that we want to be put in there, that was engaged certainly in the prior negotiation. That was included in the prior. But their position was, we signed what you signed previously, now put up the $50,000. That's exactly what their letter said. And that happened the day before the mandate and then the day after the mandate? Any communication? It was... Initiated by who? No, it was... Right. Our letter was prior to... Well, their letter was prior to the mandate, but not just today. It was actually before the Supreme Court had denied the petitioner's ability to appeal. So... I was thinking it was just today. No. No, it was quite a bit before, and quite a bit before Judge Petrangaro had entered the judgment on remand, which actually specifically said that they must negotiate in good faith. Any other questions? Okay, thank you, Mr. Hall. Mr. Ratcliffe. Thank you, Your Honor. Good afternoon. My opponent has suggested that we've ignored this court by failing to do something. I'm willing to ignore courts. I understand every day that I have an awful lot of respect for the legal system. That's why we're all here. The question that my opponent suggests to you is that one can somehow... Two things. One, you can negotiate all by yourself. I don't think it's possible. I think you have to go back and forth. I'm not going to try to re-bring up the reasons I thought the contract was valid in the first place. This court has ruled and I respect that ruling. But by myself, I can't negotiate. But if I want to show good faith in meeting you on any particular proposition, whether I'm forming a contract or otherwise, what more good faith can I do than say, I accept what you offer? And that's what I did. We took the exact escrow agreement. It was signed by Mr. Rieger. He testified in court. Yes, indeed, he signed it. Every single word was words that were drafted by Rieger. He signed and accepted the agreement. We heard those appellate court documents clearly. You said negotiate it. If you remember the context, what this court found my client did wrong was we pulled the gun too quick. We said you terminated, our contract was terminated. This court ruled you shouldn't have given them a chance. Because specifically, another escrow agreement they proposed came after my client terminated. Basically, this court was saying, how can you reject something you haven't even seen? How can you be negotiating when you've terminated before? Finally, we heard you loud and clear. We also say, what is more good faith than to accept what your opponent offers? Interestingly enough, my opponent hasn't suggested that there is any other proposal that they made to us of any type or form. So how do we react when they don't accept that agreement and they don't say that you've accepted it? Do we keep preparing one after another, maybe 30, 40, 100 different agreements until they say yes? No, it requires the people to get together. I thought we met what the court said. I thought maybe we were going to have a sale. OK, here's the escrow agreement. I think the judge probably saw that pretty clear. My opponent has also suggested to this court, as part of that same argument, that there is a condition in the contract, which calls for us to make some representations that the property hasn't been changed. And that was a condition which existed prior to their obligation to deposit the earnest money. You can look at this contract 15 times and you won't see it. You can read the appellate court decision and you won't see it. That was what the trial was about. The trial was their claim that there was a condition that we had not met. But even at the trial, we showed that the property was basically the same. It's the same piece of land it was in the first place. The only condition preceding to anybody acting is the payment of the earnest money. When you look at the contract for purchase of real estate, after the requirements are set forth, which is after you deposit the earnest money, there are nine separate parts of this contract where the phrase earnest money is referred to. And almost each and every one of them, if there is money to be returned. In one instance, it shall be forfeited. That would seem to me like the only condition preceding is the one that they deposit the earnest money. The earnest money makes no sense. It just simply makes no sense to not say that's the condition preceding. My opponent suggested that they, in oral argument, that their proposed escrow agreement that we accepted was a settlement escrow agreement.  It occurred prior to this court's ruling that they tendered it. And the contract is the same contract. Why would the settlement agreement that they proposed before not be acceptable to them now? What were we supposed to do in the absence of an obligation to prepare it? My opponent suggested that the preparation of a site plan was a necessary step before the earnest money had to be deposited. That doesn't appear anywhere in the contract. The site plan, in fact, most of the property, most of the obligations with respect to preparing the site were the obligations of the purchaser. And as we argued to you before, if you really look at this contract, it is almost an option to purchase by Reeder where Reeder, if a bunch of things happen in the way Reeder wants them to, he gets to buy the property. But if he doesn't act in good faith, that's an interesting phrase, which I don't think we have from our purchaser here, they lose the earnest money. Well, they never wanted to lose the earnest money. My opponent has suggested that Judge Peck has erred in some fashion by saying that I've actually got experience in these matters. And I think back on the years that I tried jury trials, I tried my share of them in my day. And I remember IPI 101, which unfortunately I think I can remember word for word, although I didn't write it down, they tell jurors, they tell lay people, you may use your common experience, your common sense gained from your experience in life. So my opponent is suggesting that a layman is supposed to use the common sense he gained from his experience in life to put a judge in there. Would that mean that the three of you just listening to this case have shut out anything you knew or heard before? Well, let's assume that Judge Peck has did something else. He sat there and said, well, I know the law better. Well, he's not supposed to know the law. He's the judge. But my opponent cannot point to a single fact which Judge Peck has misapplied. He can't point to a single bit of the law that Judge Peck has misapplied. And all the judge was saying was, come on, now everybody knows what the law says. The earnest money is the guarantee that you, the purchaser, are going to perform. And as we sit here today, the purchaser hasn't performed. I suggested to this court two years ago that my opponent's purpose was to tie it to real estate. They've won the case, and that's it. It's been tied, and here we are some four years later in a totally different world with a piece of property that we still can't sell. I ask this court to affirm Judge Peck. Thank you. I didn't have any questions. Can you help me with the timelines in my own mind from the date you sent them The sequence is this. They have a negotiations goal. It's contingent upon Walgreens approving the site plan. The site plan is approved by Walgreens. That, we felt before, was the conditioning factor for them to be required to make the deposit. The contract is pre-last appeal. Can I just ask for a timeline post-last appeal? Before the trial in the last case, Reeder and his attorney submitted the escrow agreement that we ultimately signed. Because it's not dated. That's where I get lost. No way I'm going to follow through. The date that you can see is contained in the record and is part of an exhibit, and it is included in the appendix of Exhibit A-1. The reference is made to a strict joint escrow agreement, which you, in this case, Mr. Hallam, forwarded to me, which is me, on May 16, 2007. At the trial, Mr. Reeder was asked prior to May 16, 2007, did you affix your signature to this piece of paper? He identified that yes, and he can. So that was the date that that happened. Okay. Any other questions that I can clear up for the court? Okay. So he signed it on May 16. You signed it? We signed it after the court issued its opinion, in this case, directing us to negotiate in good faith. Probably in the record, but do you know what date that is? I'd have to look at my facts. After you signed it and sent it back, when did you demand the $50,000? We asked it on November 25, 2008. I'm sorry. It was the same piece of paper. I was asked to look through the record, and here it was sitting in front of me. November 28, 2005, 2008, after the appellate court's written opinion, we said send us the $50,000. It's a steward title, not to us, and that's the date that was. There was no flurry of letters after that. There was not a single thing in writing except that Mr. Hallam had said, well, you rejected this before. And that was the only communication. No other escrow agreements, no other proposals, nothing else. Nothing else suggesting that there was something wrong with this form. I'm sorry. I sometimes think people can read my mind, and I know that is not true. Thank you. Thank you, Mr. Ratcliffe. Mr. Hallam, rebuttal. I agree with Mr. Ratcliffe that you can't negotiate by yourself. Negotiation does show a back and forth. So when you found that previously rejected but now signed escrow agreement, did you put together a say what, something else? Did you revise something and send them back another proposed escrow agreement? Actually, just responded to the November 25th letter, which says, here's what you signed previously. The only thing left is for Mr. Reeder to deposit the $50,000. And we responded back, that's not the only thing left. It's for the parties to negotiate in good faith. Okay, so it's a no. It's a no, yes. We didn't send something back and say, here is our proposal. We don't like that. Here's our new proposal. Right. But we did write back and say, it's not just the only thing that needs to be done is posting the $50,000. The parties need to negotiate in good faith. And we'd like to know what the status of the real estate is, because that is part of – and I think that you can find that that is an engagement and negotiation in good faith. But their proposal is, I take something that previously was rejected, I stick my name to it, and I say, son, this is it. It's all fully signed. Now post your money. Because it's that take-it-or-leave-it approach, which if I were directed by the appellate court to engage in good faith negotiations, I wouldn't take a take-it-or-leave-it approach. What were they supposed to do? Send you back to talk with them? No, say back to them, here's what the real estate looks like now. Here's what we've done. What is it you don't like? We'll change this on the escrow agreement. Here's what we'll propose for the escrow agreement. You didn't suggest any changes to the escrow agreement that they signed and sent back. And I completely understand why you think that signature from your client may not be there, that he put on there in 2007. But if you didn't communicate any other modifications, how have they dropped the ball on good faith? Well, it was their obligation to begin the good faith negotiations. Well, at least we agree. Just pretend we haven't been to law school. You give them something and you say, here, this is what we want. And they say, no, we're not going to sign that. But then ultimately they say, oh, that's what you want? Okay. And they sign that. Now what's in bad faith about that? You might not say, well, maybe the devil's in my head, but what's in bad faith about that? Because they knew in the context of what we had initially proposed as changes to the escrow agreement, which you have to look at the context of how this second subsequent settlement agreement, or escrow agreement, came up. We had tendered a previous marked-up escrow agreement that contained other additional provisions, which this court said these would be reasonable provisions. And we find support for those reasonable provisions in the record, because you've agreed you've used those in other actions. After we proposed those other changes in the first go-around, we proposed a second one that said, if we can avoid going to trial here, fine, take these. We don't agree with them? His response back was, well, now you've agreed that everything that we sent you, that wasn't proposed previously, was commercially unreasonable. Nice try, Peter. I'm sending this back to you. Then, after they say everything we've proposed is commercially unreasonable, but the court has said it's not commercially unreasonable, they want to take the one that they rejected and made the comment about everything else being commercially unreasonable and say, Peter, we signed this one now. Now post your $50,000. Well, wouldn't it at least be reasonable to think that the ball is now in your court and to propose, if you don't like that one, to make a comment proposal? Well, and I think it's important to look at the timing. It was before the issuance of the mandate, before that. Well, they could have done exactly the same, and it was their obligation to start the ball rolling in good faith, not to just say, I'm going to take what we previously rejected and sign it and tell you, put up $50,000. As a take it or leave it period. And in the context of the bigger picture of what was going on with the deal, it was good faith on our part. It was, I think, good faith on our part to go back and say, wait a second. Where is this project? What have you done to this project? Before we tie up $50,000, where are we in this project? Because that is, in the context of the bigger picture of the entire transaction, good faith. That is good faith on our part. To say, my son wants to buy the property. He wants to develop a lawn. You didn't follow the SRO agreement at the same time that you're trying to figure out what changes, if any, have been made with the property. I mean, you didn't respond in any way to the, what do you call it, the rejected, no, accepted, or signed. It seems that there's some obligation on your part to look at that agreement and say, we want to add these things to that. I can understand how you would be saying, it's a take it or leave it. But you didn't have to do that. You could have responded by saying, we want these changes to this agreement. I guess, in the context of what this court had told, the order of this court was to tell the defendants specifically, you need to act in good faith. You've previously terminated this in bad faith. You've done this as the gotcha. You've done it in this take it or leave it. Now, you need to act in good faith. And what we get in response is, the take the one you previously said was rejected. We'll disregard the one that has the commercially reasonable permissions. We'll sign this one, drop it on you before the mandate, and say, now post your $50,000. Meanwhile, going forward, continuing to develop the real estate, maybe changing it so that we don't even have something that we can reasonably purchase. In the context of all those steps, writing back and saying, give us some assurance that the property is exactly how it was, so that we know what we're buying, know what we're going forward with, before we have to deposit $50,000, would seem to be a reasonable response in the context of what this court had specifically told those defendants. You act in good faith. Dropping this and saying, now give me $50,000, in the context of that, is not good faith. We thank both of you for your arguments this afternoon. We'll take the matter under advisement, and we'll issue a written decision as quickly as possible. The court will not be in a good place to ask for a final change. I'll stand to the recess, Mr. Speaker. Thank you. Thank you. Thank you. Thank you. Thank you. Good evening, Mr. Chairman. All desks please rise. This clerk is now back in session. Please be seated. Thank you. Madam Clerk, please call the next case. Mr. Herman, you may proceed. Before we get too far, I think I've got a rule for a client. I want to point out that the law student who is in this filing is the county clerk and the state's attorney. I represent her. I'm pleading for a change to my agreement. I stayed on the case and I was handling it from the beginning. The appellant in this case is really the county bureau and we'll be paying the money. It is obviously coming from the state's attorney. The county bureau is the one that's going to have to pay this. And they are my client in whether they decide to pay this or not. We believe that the purposes of the Freedom of Information Act were not served in this case by the wording of the attorney's fees. And we ask the court to reverse the process based on that. As the court's word, the purpose of the Freedom of Information Act is to give information to somebody who requested it. So issues can be freely discussed. Persons can be fully informed on political decisions and the monetary government make sure they're making the correct decisions. That can be in the public interest. Is this the only way in which this information can be obtained is through a FOIA request? No, I don't believe so. What other avenues are available? Mr. Taliani had a post-conviction matter pending. I don't think it was a PC case, but I believe it was a 214-01. It's still pending. I believe he could file a motion on that, seeking the grand jury transcript. I think he could have filed it even without that pending in a criminal case and sought a court order to do it. Yes? Under another act? Is there anything else that provides for the production of this transcript and other things through a FOIA? Let me go back, I guess, all the way to the beginning. The only Supreme Court rules require that the grand jury transcript be given to the defendant in a criminal case. And it was in this case. The Supreme Court rule, and I don't know which rule it is, requires the testimony of witnesses, either before the grand jury or before a permanent hearing, be provided to the defendant as part of the statutory discovery. And that was one in this case. As I understand it, Mr. Taliani's trial attorney lost that transcript somewhere along the line, and he could not obtain it from him and he sought the Freedom of Information case. It's been our position all along that we cannot give a grand jury transcript to Mr. Taliani or anybody else unless there's a court order directing the state's attorney to do so. I realize it's Mr. Taliani's actual grand jury transcript, but I don't know that he has any different Freedom of Information request than a member of the press. Well, as a matter of fact, by the language of the Freedom of Information Act, grand jury transcripts would be excluded from there because it exempts anything prohibited from disclosure by law. I agree with that. And the Grand Jury Act prohibits the disclosure of grand jury transcripts. It prohibits disclosure without a court order defining that's in the interest of justice. Was this objected to in any way? In the court? Yes, it was rejected. Who was it objected to? Did I object to giving over the transcript? Or did I cite the statute that says it can only be given with a court order? That's correct. I did, in both the answer to the request before we got to court, the grand jury statute decided that it can only be given upon court order, and the answer to the complaint, it was answered that it can only be turned over with a court order pursuant to the grand jury statute, 725 ILCS 5-112-6, and that was our answer all along. The answer to the complaint that was filed? Yes. So, in other words, if I understand the facts, they went to a county clerk who said, I don't have anything to do with this, goes to the state's attorney, the state's attorney says, I can't do anything because it has to be pursuant to a court order. Is that correct? A little bit different, but the county clerk did say it didn't happen, and the county clerk does not have it. It was appealed to the state's attorney. I'm not exactly sure why that was, but my answer to the appeal was it can only be disclosed pursuant to a court order because of the grand jury statute. Correct. Okay, so you were basically acting as an attorney and giving advice? Yes. Okay, and then? I cited the exception, and what I thought was the exception was why it was controlled under the FOIA statute, not specifically controlled by other laws. Okay, so under the Grand Jury Act, can you proceed independently under the Grand Jury Act without some FOIA? Yes. I believe the Grand Jury Act is more specific, and that's the statute that should control it in this case. But does it provide, back to my question a long time ago, does it provide an avenue to acquire the grant? Yes. It does? It does. So what are we talking about FOIA here for? I don't know. That's the way the action was brought. And then in the FOIA request, did you formally object to the court of law in any manner? I told the judge of my answer that it can only be given with a court order. I told the judge and Judge Gordy. Did you argue against the grant by this judge? No, I said if the court grants the order, I will certainly turn it over to him. And to an ordinary layman, a complaint is just simply a request under FOIA, right? I don't know if I can answer that. Okay. I'm not a layman, I guess. Your objection then, and is now, is that you couldn't just hand it over. That's correct. You could only hand it over after you receive the order and this. Yes. FOIA's order was sufficient for you to do it. Right. I felt I was obligated by the grand jury statute not to turn it over after the court order. Unless this court takes the order you just ordered. And I told Judge Gordy if he grants the court order, I would certainly hand it over. And which you did. And I did. He entered the order, and it was turned over. I don't think this case is anything at all like Calinan. In Calinan, he was seeking the buried records that the Prisoner Review Board was going to be determining his parole status on, granting his parole. I can tell you this, that Calinan is a prisoner on Bureau County. I can tell you that every year he comes up, I write a letter to the Prisoner Review Board objecting to his release. Should Calinan be able to get that? I think absolutely so. He should know what the Bureau County State Attorney is saying about him. Whatever other letters were in there. I think Calinan's got a right to see that information so he knows how to respond to it before the Prisoner Review Board. That is something that was going on right then and there. That is something that he needed to determine whether the Prisoner Review Board was going to be acting in the best interest, the best public interest. Calinan, in contrast, thought about a 14-year-old grand jury transcript that no one has been able to put any relevance on or put any importance to of what it would be possibly useful. His case was tried. He was convicted. His case got held on appeal. His post-conviction matter did not mention the grand jury or anything regarding the grand jury or improperly indicted or anything like that. Well, where is that argument going to right now that you're talking about? I mean, is he or is he not entitled to a grand jury transcript if it proceeds properly under the Act? I think he is. And so you did not give this argument in the trial court, did you? I didn't. That what? That Calinan is not applicable to this case. They're entirely different situations. Calinan needed that information for the then and now. Is your argument essentially that since you had no choice but to wait for a court order or to get a court order or for them to obtain a court order, that the county shouldn't have to pay these? That's correct. I could have required Mr. Calinan to prove that it was in the best interest of justice that the court should grant an order directing me to give him the transcript. I did not do that. I basically told the court, if you issue the order, I will turn over the transcript. It was his transcript, and I didn't see the point of prolonging that, I guess, and having to hear whether it was in the best interest of justice. So in that sense, I guess I do agree that if he wants it, he can have it. It's just a matter of paying attorney's fees and the amount of attorney's fees and the avenue it took to get that transcript. Could you have proactively stipulated to an order? I think you could. Or you can present the court an order saying, I need this protection of a court order. I believe I did in my answer. I believe I did in my answer to the complaint that it can only be given upon a court order. I believe I did in my response letter to Taviani that it can only be given upon a court order. And whether he were to file the motion in the criminal case, that would have certainly solved the problem. If that would have happened, we wouldn't be here today dealing with $9,000 in attorneys. And I don't think the County Bureau should have to pay $9,000 or any amount of money because their state's attorney followed the law and didn't just give out a grand jury transcript, which I think is prohibited in the state's attorney booth. In whose possession is the grand jury transcript? The grand jury transcript is, well, there's two places. It's kept in the state's attorney's file, and it's also kept in the defense head county. I don't know if a court-to-court keeps a copy.  The court does not have a copy of that. I think there's a couple of counties that did do it that way, but I think the court's a rule that it should not be going to the collective court at this point. So the only place that Taviani could have gotten it at this point, I guess, is from the state's attorney's office because his attorney did not have a copy. Whether there was any made at that time 14 years ago, I don't know. Well, it's interesting why the archives at the state's attorney's office are not part of the court. Most other documents are, aren't they? They are. I don't know why that is. The state's attorney pays for the grand jury court report. It pays to have those transcripts. Transcripts. Transcripts. And I suppose that's why we get them rather than them going into the court. Historically, it's just the way it's always been done. One of the main points, I believe, is I don't believe the defendant has, I'm sorry, Mr. Kaplan has met his burden of proving the reasonableness of his attorney's fees. I think the amount of evidence he put on, I think, is insufficient both with regards to the hourly rate and with regards to the hours. Mr. Kaplan, the court found that many of the items were not reasonable. The trial court reduced 10 of the 27 entries, reduced the number of hours by 25%. Mr. Kaplan's map was in there. Mr. Kaplan sought fees for working on both of his freedom of information cases that he had pending at that time, even though he only prevailed in one. He was seeking attorney's fees for the alternative method he was seeking to get the grand jury transcript. He was checking with, his billing suggests he was checking with court reporters in the chief judge's office to see if they had documents on the grand jury transcript. He says that he was, he admits that he was seeking fees for both cases, but he would have been, if he would prevail on the other case, he would not seek the attorney's fees for that case. I've never heard somebody asking for attorney's fees they have not yet prevailed upon, and that I don't think is right. I think taking all those matters into consideration, I don't think he's presented reasonable evidence of what his attorney's fees are. I think his billing is in summary. It says what he was doing on those days, but didn't break it down in the amount of times he had spent. With regard to the hourly rate, I don't think he's met his burden of proof there. He's produced evidence from one attorney who hasn't done any freedom of information cases. That's $250 an hour. That's what he was getting paid as an extra witness in the case. Mr. Kaplan himself testified that he felt it was worth $250 an hour, although he hasn't said one last time he tried a case in the 13th Judicial Circuit, and he said he did not do an FOI case before this one. He did say that he worked for the Department of Employment Security at a contractual rate of $30 an hour plus benefits. I think he left. And then his bare assertion in the record that he feels that his services and the amount of work he performed in the case was necessary. I think it's self-certain. It's not based on anything in the record. It's one bare statement as to the summary of what he had done. What is our standard of review on those issues? I think the standard of review on the court's discretion would be an abuse of discretion, whether or not the court's view of the reasonableness of it, I think, is abuse of discretion. Whether the defendant makes a verdict of proof, I think, should be denoted. I don't think Judge Doherty should have been in the position where he had to pretty much put everything aside and decide the case based on his knowledge of cases in the 13th Judicial Circuit. And I think that puts the trial court in an unfair position to have to essentially determine what reasonable attorneys fees are from very little substantive evidence in the record. I think if you look at the factors in J.B. Eskridge and Son v. Clay Paugh, those factors I think all weigh in favor of the defendant, the county in this case, the complexity of the case, the nature of the case, the benefit to the client, all of those things. I think there's very little speculation on how this would have benefited Mr. Taliani. I think there's nothing complex about this case. We're talking about the grand jury statute, the freedom of information statute, and a few cases. This case only gets complicated, and in a lot of cases, when we start discussing the attorneyship issue, the underlying case of whether the grand jury transcript should be turned over should not have amounted to $9,000 in attorneyship. And under the circumstances, because Mr. Kaplan pointed out that we acted in good faith, I agree with that, and I don't think attorneys fees should have been awarded in that case. And I think the judge has discretion to do that in the statute. I disagree that Cal-Nan makes this automatic. That's not the issue with Cal-Nan as I understand it, although you understand it better than I do. Cal-Nan, the issue was whether it should have been awarded at all. I think the prison review board was using the wrong defense, if you will, on whether this was for private use or not. Based on that, this court held that it should have been awarded in that case. There was no issue raised in the brief case as to the reason on the subject of whether it should have been awarded in the first place. And I think that goes back to what I was saying before about Cal-Nan being a current case as opposed to this being 14 years old. I think the question the county board asked me is, well, what will you do in the next case? I didn't have an answer to that. I don't know if the answer is to destroy grand jury transcripts so we can say we don't have them or to keep them in the file for the historical purposes of this. But I still feel that a court order is necessary before a grand jury transcript can be turned over to Mr. Cal-Nan or anybody else and ask the court to reverse the order to turn these cases. Thank you. Are there any further questions? No questions. Mr. Kaplan, you may respond. Thank you, Mr. Court. If I may, at first, just take a moment, a personal moment, and apologize to Justice Schmitt for how I conducted myself in the companion case. There were two cases that went parallel for a while, and he was one of the justices on the other case. And I understand the decision that was made in the last orders. I don't quarrel with him. I apologize for anything I've done to cause it. There were other circumstances, and that's the place to go into it right now, but it was not as described in the order. Give me one more time. That's the best I can do. Okay. Now, for this case, first of all, I wasn't sure of wearing the earphones because I found out my hearing was going a little bit. I would be fine over here. But if Mr. Herman was saying that I had lost the original transcript, it was a fire attorney who had done so, that he went on a, you know, pouring all over the place to see if he could find someone who had it. I got on the case. The first thing I did was to try to cut it down to who has it, who's a proper defendant, invoking instead of, you know, carrying out who didn't belong, and revise the complaint to make it sufficient to the basic facts of the case. And somehow, as I hear the arguments and the questions of the court, somehow I think we're off the issue of the nature of how do you ask for a humanitarian transcript. The question before this court, it doesn't have to be resolved by Judge Darkey's ruling that it had to be turned over by FOIA. Mr. Herman had already raised, in a motion to dismiss, a permanently stopped, tried to stop, reduction. He cited the grand jury exception. He did not cite the exceptions to the exception. And we contended at that time that he did not, he had a plea to approve the exemption he was claiming. Otherwise, all records are subject to FOIA, who have exception. Unless there's a statute somewhere else that has to be raised in the matter. Well, Judge Darkey heard all that, and then we got to the point where I think the product came down, so after going through all that, Mr. Herman, I think he said, well, if there's an order, we can do it. And I said, well, give it to them. You know, just cut to the chase again. This thing, you knock out people who don't belong. Cut to the chase. I don't want to litigate something. I want a transcript. And we filed under FOIA. I didn't file under FOIA. Mr. Pagliari did, and I came in later. And took up the case from there. And if I had not, if the case had not been filed, I don't think that Mr. Pagliari would yet have his transcript. And so it's like a cause and effect. Let me interrupt you for a second. He had just filed a petition under the Grand Jury Act, and petitioned the courts that, look, under the Grand Jury Act, I can't get these without an order, a court order. I need an order. My prior lawyer lost the thing and filed a petition under the Grand Jury. I don't read the Grand Jury Act to provide for that private right of action in the first place. Second of all, he already had an order. They gave it over to the criminal case. And the Grand Jury says, in the interest of justice, or because of some other law or other order, they already had the order to turn it over. And during the cross-examination week, during the de-petition hearing, I was asked, do you think it's fair that the county would have to do this if we had to violate the law? And I gave him a long answer that is also in the record, saying we don't have to violate the law. We already have the order. It doesn't say how many times you have to do it. There's no limitation on it. There's already an order saying to turn it over. So if I was to ask him the floor, you have to say, would we violate the law? No, it falls fully within the exception. It's already there that they never cut it. And I pointed that out to Judge Dorey, too, that may have helped you explain a little bit. I don't know exactly how he was thinking of that. But it came up that under Lever and under the other cases, you have to plead and prove your exemption. If you're going to go out and do another law, you have to plead and prove that approach. So what you're saying is that the Bureau of County had to plead the grand jury? They had to prove the full grand jury to show how the exemption applied, not just the first part, but drop down to Section C, where the assumption is that Mr. Comrie was lying about when he thought they could finally turn it over. That wasn't brought up in the first instance. Had it been brought up, it might have been easier in that time to say, well, we can't do, as you mentioned, why don't we just affirmly say, Judge, we're here and we have it. I can't give it over unless there's an order. The court feels it would be in the interest of justice to do so. I've already given over anyway. Give me the order. Well, Mr. Taliani filed it himself as a motion to dismiss. I came in as a second motion to dismiss. And if there's a person that involuntarily wanted to give it up at all times, who cares? Well, that's not how it works. Taliani asked for a motion to dismiss. I asked for a motion to dismiss, motion to dismiss denied. And it wasn't going to go through all of this. And I had to go in there and I did not know 484 in. And one of the things I can do is I can pick up a case I know nothing about and then take from the static position and then appeal it or go forward on a matter of law. I don't like doing divorce. I'm a little good at divorce. I wouldn't hire me as a divorce attorney. I wouldn't recommend anybody to do it. But if you have a single issue after a divorce case, I can look up the law and I can use my skills as opposed to anybody else to find out what the law of the matter is. Plus, I also did some research and I could not find any other attorneys through the internet or Google who especially hold themselves out to be FOIA attorneys. The attorneys that I know in the field under other bases also do other things. I found out that the gentleman in the classroom, he did a lot of DUI. And once he had to use a FOIA, he did FOIA because he had to do it for that case. But he didn't specialize in it. And that wasn't the purpose of it. I necessarily had to come up with something that most people, most attorneys don't know that much about. And I was selected, and there was a testimony as to why I was selected for Richard Killeen. He knew Don Rihanna. He recommended him. I'd done business with Richard Killeen for years. He knew how I handled myself. It was better early than later generally. But he knew how I handled myself. And he recommended me because I could take something that nobody is used to doing and do something with it. But Judge Daugherty said that he slashed me in half as far as fees go, cut it down. He went line by line. In the case law we cited here, he talked about it going line by line. And he used his own experience, which was there. He used a standard I didn't agree with, such as the capital compensation law. And I'm not an appointed attorney, which that should never have been done. But I am not in a position now to say it should have been more than $162 an hour because I didn't really appeal that. And by the same token, the decision was made that traction for laws under FOIA, that's the end of story. And nobody appealed that. Now what I'm going to use before this court now is, was it used reasonable for it? I did. And was it within the discretion of Judge Daugherty to make that award? Did he think it through? I think he obviously thought it through. As to me over time for the other case, I gave credits for that. Now there's certain things in research that were necessarily applied to both cases. If I had to look at Lieber, the Southern Illinoisan, all those cases I had to look at, it doesn't matter which case I'm looking at, I have to look at those cases. But then I can start splitting out things where they necessarily are separate. And then Judge Daugherty heard that explanation and he made a decision within his discretion. So I think that these are reasonable. There's nothing in here so far that's shown me, not that I necessarily want to recognize it, but there's nothing that's shown me that the judge abused his discretion. All the factors were considered. And the issue of, in this site on, the last brief I compiled on Case 5, I talked about Calum and citing Duncan Pub. Duncan Pub is an interesting case because it didn't go to judgment. There was a FOIA request and then some of the judgment apparently was on the books, it was ready to go, but they turned over the documents before judgment was entered. Yet, there was attorney's fees allowed for that. So that shows me, anyway, that shows me that if an attorney does something and there's a direct causal relationship between what he does and the end result of substantive prevailing, in this case, 100% prevailing, I got the whole transcript, we got 100% prevailing on it, there was an attorney there, did he get the result, did he get it all, he had a substantive, then you have to pay attorney's fees. Duncan also, the statute is the word made, but the way that Duncan and Calum come around to it is basically you've got to do it. And the reason you have to do it is because of indigent prisoners. But I think I've also raised a point, too, that let's say the Italian was not indigent, paid me the amount of money, $9,000, let's say, to go ahead and he paid me because the judge thought it was reasonable. Now, I want to go, if I were to have to come, he paid me that on the front as a retainer. Wouldn't he not have the right to have me go back to court and get that back for him? And why would I do that for free? As a judge, there's an integral part of the cause of actions allowed under FOIA. One is to get the documents, the other one is to get attorney's fees if there's been a violation of FOIA. And all you have to show is, in this case, the judge ruled that was the case, ordered it over there to be paid. Let me ask you this, what exactly was the violation of FOIA that he just referred to? Because... It's... Let's use a wrong word. 611, they used the word that the... such as the documents were property withheld or not in property withheld and that type of thing. So it's a short cause of action for FOIA. These are public records. We made an inquest. And they refused to be questioned. That's all. No. I don't know. Because when I filed a complaint or anybody files a complaint and this says, I asked for the records and we know the records are presumed to be reducible unless there is an exemption which has to be raised by the public body. So at the beginning of the case, I asked for the records. They weren't given. And we wanted to turn them over on a declaratory judgment to turn it over. That's it. Next step is to say something, is we can't produce them. And the need for those states, what? Give us a... It has to be something to adversarial testing. Which in my mind is file an answer and say why not. Here's the statute. That's a question of law and there's really not many more facts you have to rely upon for that kind of thing. But then the case in the posture is we want it. We can't give it to you for these reasons. Now we have to test those reasons. And this is not like the card cases, voter registration cards which involve privacy. This is Pollyanna's transcript. And you don't get into personal invasion of privacy or any of that issue. This is a document. It's a public record. It's not listed as one of the exemptions in FOIA. You can reach out to another law court, but you must prove your exemption. And your exemption is we can't give it to you unless there's a court order. Unless there's a court order. But in this case there already was a court order. That's not telling you you got the first transcript. You can't say I can't violate against your statute and give it to him now because there's no order. Well that means maybe there was no order earlier. Or that he violated the statute earlier when there was no order. Once there's an order, there's an order. He can do it. There's no problem with that. And in the record I laid out possible ways he could have done this by saying ordinarily we would not do this. But in your specific circumstances these are factors that allow you to do it. And that's in the record. I also gave testimony of that too. I can't give you the page number right now or of anything, but I can tell you those things happen. Now, the other issue before I run out of time is two minutes. Is to find out I say Judge Dorothy was in error when he summarily threw out myself a petition for attorneys for trying the issues of attorneys. Again, had I been paid in advance then and they didn't want to pay and I had to go file a case or then I would not be paid for giving my client $9,000 for which he would be entitled to. Because he would be entitled to reimbursement for me. It ends up with me, but that is his right. And so if you take a person who is not an indigent  I don't think you want to make a law that the attorney cannot get paid for good and for reasonable and necessary legal services to enforce a cause of action that actually exists in favor of his client. If you look at the Burlak case which was originally misinterpreted that one says that you're entitled to attorneys fees for every part of the case. And they may have a loss in my opinion. A knock-off, the complaint, the pleadings, the post-trial, the pre-trial plea, the actual trial, the post-trial appeal, all of that they termed as entitled to attorney fees. Well, section 11 gives a specific cause of action for attorney fees. There's no reason why you can have attorney fees allowable for the entitlement to the record part and another clause, an equal dignity. There's no logic to that. And again, if you look at the example I made earlier, I made it in my papers, when I did the calculations, if you take the total hours, that would judge Judge Dory as unreasonable and that which he wouldn't even consider, it comes up to what, about 90 hours? 77 hours of actual time. But he only allowed me about 15 hours of actual time. So you take the dollar amount he gave me, which is $9,000 and change, divided by the 77, you get like $120 an hour. Okay? Now, I think I'm worth $250 an hour. I've had over 60 jury trials, more than that. I've had so many, many appeals. I still do other appeals and refer to other attorneys. I've been in the Illinois Department of Deployment Security. I've reviewed cases for them. I don't make the final decision, but 90% or better of what I submit to the Board of Review gets approved. That's actually reviewing cases as you would here. I would do the same thing to the referees in the lower administrative levels. So, plus I've got 40 years or better doing this, and I'm including the law clerking I did. So, I think, yeah, if anybody can tie up $250 an hour, I think I am in merit to do that. Now, I said $250. It might as well go ahead and testify $250 as a reasonable fee. And so, what we're asking for is not unreasonable, but enough. You're not appealing that issue. Pardon? I'm sorry. You're not appealing that issue. That the trial court loses discretion in granting the $160. No. I'm just saying they should have summarily rejected the other claim. Maybe there was nothing I did that was reasonable and necessary, but if you first have a look at it, just find out. And they have a right to attorney's fees. You can take me on this. In the end, the court should pay that when it is found that they did not comply with FOIA. And that's the posture of the case. They did not comply with FOIA. The court heard the arguments. They went over the attorney's fees. They came to a decision. And they allowed that. And the only issue before the court is that did the court abuse its discretion in awarding attorney's fees without challenging the rape? And shouldn't we have looked at the effort it took? The two days or two afternoons of actual trial for the eyewitnesses, which is more than we did with the other one. The other one was more paperwork and pleading and research. The actual trial work, two days or two days of actual trial, was what we had to do because they opposed it. So, where we are now is it was attorney's fees were allowable under FOIA. The court did not abuse its discretion in doing so, but it should have allowed the claim for attorney's fees for proving up attorney's fees. In that case, if there are any questions, if not, I'll step down. I don't believe there are. Thank you, Mr. Chairman. Thank you. Mr. Herman, you may reply. I'll be brief. The motions to dismiss that were filed all raised the grand jury statute as the issue why the motion should be dismissed because we were relying on the exemption of the grand jury statute and as that relates to the statutory exemption of the Freedom of Information Act, I think that's B. The Duncan Pup case, I don't think it's actual here, that was a case where the government was not actually in good faith and the government wrongly denied the Freedom of Information request, the lawsuit was filed and said, well, we gave you this stuff so we're not paying and the court rightfully said no, you caused the lawsuit to be filed by denying the request, you're going to pay for their attorney's fees in recovering what they were seeking. The fee agreement, Mr. Well, let's, before we get into that, what about Mr. Kaplan's argument, there already was an order out there that governed this request? The discovery rules are pre-trial or required under Supreme Court Rule 402D to give all this stuff to a defendant pre-trial so he can know what's going on and what the evidence is going to be against him at pre-trial. I don't believe Supreme Court Rule 402 is in effect 14 years after he's convicted. I don't think I can rely on that and say well, there's a court order, Supreme Court Rule 402 allows them to give it to you. I think it's a factor to be considered on the court's discretion in the interest of justice should the order be entered first of all in the grand jury. So you're saying the order is only limited to that Supreme Court rule? Mr. Kaplan's referring to, yes, in this case, Judge Gordy did enter an order. No, no, no, you already had an order. How many years ago? The Supreme Court rule. So was there a physical order in the file or were these produced to the defendant pursuant to the Supreme Court rule? Pursuant to the Supreme Court Rule 402. So there was no request to the court imposing jurisdiction of that trial court on an order directing the transcript being provided to the defendant. I believe we were obligated to do that. The courts are full of finding out that you were obligated to do that, but it wasn't done. The trial court was asked to make an order forcing people who were obligated under the rules to provide it. We're asking, I think Justice Smith's asking, is there an order signed by a judge directing, no matter how many years ago, this specific order? No, no. Was there a standing order? I think in the 14th there's a standing order, a local order requiring that in criminal cases. I'm going to take error in the Supreme Court rule where this is what's required in discovering a criminal case. I'm not aware of any 13th judicial circuit order that requires that. I am aware that Supreme Court Rule 402 requires it to be provided and was provided. There's still a standing order, I suppose. Not technically, but for best purposes. Yes. I wouldn't tell you that you weren't obligated to do that. You certainly weren't. The fee agreement, Mr. Kaplan talks about if he had a free agreement, curiously he never introduced that. That would be the one arm's length transaction that would give Judge Doherty an opportunity to see what is reasonable in this case. He failed to produce that. And the case decided that's an important factor to consider. Mr. Kaplan's assertion that $250 an hour is fair and reasonable based on his experience. His experience is only one of the factors under JBS law. The other factors all weigh in favor of the challenge of why attorney's fees should not have been awarded in this case. With regard to the cross appeal, there's no authority that I'm aware of that Mr. Kaplan has cited that would allow attorney's fees to be awarded before collecting attorney's fees. And I think the reason for that is very simple. Mr. Kaplan could take this case to whatever lengths he could. The Illinois Supreme Court, the U.S. Supreme Court, he could have spent more hours on the trial court before he could charge Doherty, essentially just incurring more legal fees for the county to pay in this case. I believe the courts did not award attorney's fees for his collecting of attorney's fees. I believe that Doherty was correct in that. Could you have been more proactive in this matter by saying and reduce the fees substantially maybe a couple of hours by simply saying you can't do this without a court order here's a draft sign it if you agree we'll present it to the judge. I thought I was doing that in my answers in my motions to dismiss and I couldn't do it without complying with the grand jury transcript with regard to communicating that directly to Cattley. He still is in prison. That couldn't be done. At least by the time Mr. Kaplan came in. By the time Mr. Kaplan came in I started I cited the grand jury statute to him for a phone conversation I told him in our first phone conversation I don't care if the judge enters an order I'm giving it. If he does I'll give it to you but I don't think I can give it to you absent that court order. Thank you. Had he done what Judge Lippy suggested we probably could have knocked out 15 hours of what Judge Doherty thought was reasonable. I'm sure by the time I get to the case I know what I was doing etc. The great majority of it was defending against the motion to desist there was a lot of research if you look at the petition seat up and down not all the cases but many of the cases the pages of cases I looked at trying to find out what's happening that's because nobody there is no expert so to speak in the court yet. I just had to get into it myself. I may be misunderstanding your argument but I'm on your well is this a rebuttal or I think we're looking in your argument now to the yeah to the okay yeah I understood that your question to deal with the tactics of the conflict but I apologize if I'm wrong. No I think it could well be wrong. And none of these things would also apply to the answer in every amendment also apply to the supplement of petitions which of course so wish it to be to be remanded. Let's see if I can get more specific to the I felt that he was specifically not to the conflict and when does it end I think my petition had a plan about that because I had a hearing on the petition for the for the time it took to get three speeches. This had a hearing on the petition it took me to get back. It comes on and it changed maybe narrowing to affinity but at the same time it never does end. I think my petition requested that what I know I have already done since I made my last petition plus whatever will be done in this you fill in the blank at that time and maybe somebody else should do the math but it would not go on forever I contemplated that and if I didn't and I should have I think the court would do the same thing and say okay let's take a look at something in the petition he would have in front of me we would not have to have an evidence re-hearing because they pretty much see everything unless it was requested now if the evidence re-hearing was requested then that would cause it to drag on in my opinion that had he given the thing over earlier the attention over earlier when he put it then when it ended there all those attorneys filed two motions to dismiss are we supposed to be focusing at this point on the propriety of the denial of attorneys fees for preparing the petition yes and my specific focus is on when does it ever stop well I gave a method how it could stop here's the petition what I've done so far that if not there is a fee petition you're going to see what I'm going to do now consider this and we don't have to have a hearing that goes to the issue of when do we have are you going to have fee petitions tonight no the supplemental is all I wanted to have and part of that would be prospective damages as soon as they become liquidated and then prospective fees not damages when they become liquidated the court would say okay here's what I think about the fee petition as presented as your supplemental see what you have here and I see what you've done since that time take that as a package this is what I want on the supplemental fee petition and together we have my ruling on everything and it stops but my point is this we talk about it going on forever the it was almost at the virtual invitation of Judge Doherty to Mr. Herman he said all I have here is the fee petition that's before me are you sure you don't want to file anything it was continued for that purpose and he didn't come up with anything at least once when Judge Doherty made that comment and I felt a little degraded for that because it would be fair make sure he knows what the status might be he asked for it and the only reason it wouldn't stop if he used my method of a supplemental petition with prospective damages to be considered as we go along and when I say damages please excuse me with prospective fees to be considered then it would be liquidated the end of the story but the other side would have a right to ask for whatever damage you were hearing on that it wouldn't be my idea I didn't want to end it remember I was getting rid of people that didn't belong to the case and cutting down the issues and the complaint I have a history here of trying to cut to the chase and it only was extended because he wanted to fight it and it was my method what you have now is what I'm going to see I'll make a decision and nobody asked for anything else the other side didn't ask to continue it'll end and that was the point there he did mention the good faith issue on Duncan I just want to make sure that it does apply to the prospect well I can't come to the point now and if what I have not written to say is not an issue well so be it thank you for your attention if you have any other questions you want to ask me I don't believe we do Mr. Chapman thank you thank you counsel for your arguments in this matter this afternoon it will be taken under advisement and a written disposition shall issue